United States District Court
Southern District of Texas
**ENTERED**
December 12, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:18-CV-338 |
| | § | |
| 27.36 ACRES OF LAND, MORE OR | § | |
| LESS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is the United States of America's ("United States") "Motion for Immediate Possession"[1] and the response filed by Baudilia Lydia Cavazos Rodriguez, Jose Alfredo Cavazos, Eloisa Rosa Cavazos, and Reynaldo Anzaldua (collectively "Defendants").[2] The Court also considers the United States' "Motion for Expedited Hearing,"[3] Defendants' response,[4] and the United States' reply.[5] There are thirty-one additional defendants in this case who have not responded.[6]

After considering the motion and the relevant authorities, the Court **GRANTS** the motion for immediate possession and **DENIES AS MOOT** the motion for expedited hearing.

### I. BACKGROUND

On November 5, 2018, the United States filed a complaint[7] and a Declaration of Taking[8] seeking "the taking of property under power of eminent domain" of 27.36 acres of land located

---

[1] Dkt. No. 5
[2] Dkt. No. 18.
[3] Dkt. No. 17.
[4] Dkt. No. 19.
[5] Dkt. No. 20.
[6] The four defendants that have filed this motion are represented by the same counsel.
[7] Dkt. No. 1.
[8] Dkt. No. 2.

along the border of the United States and Mexico.[9] The property is taken "under and in accordance with 40 U.S.C. §§ 3113 and 3114, which authorize the condemnation of land and the filing of a Declaration of Taking."[10] The complaint also references that the property is taken under acts of Congress authorizing the taking of land and appropriating funds for the public purpose at issue here.[11] The public purpose of the taking is "to conduct surveying, testing, and other investigatory work needed to plan the proposed construction of roads, fencing, vehicle barriers, security lighting, cameras, sensors, and relate structures designed to help secure the United States/Mexico border within the State of Texas."[12]

The United States seeks a "temporary, assignable easement beginning of the date possession is granted to the United States and ending 12 months later."[13] The easement consists of "the right of the United States, its agents, contractors, and assigns to enter in, on, over and across the land . . . to survey, make borings, and conduct other investigatory work . . . including the right to trim or remove any vegetative or structural obstacle that interfere with said work."[14] The easement "reserve[es] to the landowners, their successors and assigns all right, title, and privileges as may be used and enjoyed without interfering with or abridging the rights hereby acquired."[15]

The United States avers that it attempted to negotiate a right of entry with Defendants prior to the instigation of this suit.[16] The United States provides the following timeline of those negotiations and discussions. On April 20, 2018, representatives of the United States "contacted Defendant Jose Alfredo Cavazos by telephone regarding the right of entry for the subject

---

[9] *See* Dkt. No. 1-1 pp. 6–9 (Schedules C & D).
[10] *Id.* p. 2 (Schedule A).
[11] *Id.* (referencing 8 U.S.C. § 1103(b) and Public Law 115-141 Div. F, Tit. II, 132 Stat. 348).
[12] *Id.* p. 4 (Schedule B).
[13] *Id.* p. 11 (Schedule E).
[14] *Id.*
[15] *Id.*
[16] *See* Dkt. Nos. 5 & 20.

property."[17] On April 23, 2018, "[i]ndividuals from the United States Customs and Border Protection and United States Army Corps of Engineers met with [Defendants] and explained the temporary estate sought, the surveying/testing process, any potential impact on the Cavazos' property and answered any questions posed by the landowners."[18] A proposed Right of Entry was presented at that time but Defendants requested additional time to confer with an attorney.[19] On May 8, 2018, Defendant Jose Alfredo Cavazos declined to sign the Right of Entry.[20] On May 17, 2018, a "Declaration of Taking Notice Letter" was mailed to Defendants and the subject property was referred to the U.S. Attorney's office.[21] On June 6, counsel for the United States "contacted opposing counsel and requested a meeting to discuss the right of entry."[22]

On July 2, 2018, United States' counsel, John Smith, contacted Defendants' counsel and explained the Right of Entry and the condemnation process.[23] "On July 13, 2018, Defendants' counsel explained in writing that Defendants '[were] still considering the request.'"[24] However, the United States indicates that on September 4, 2018, "based on Defendants' statements to the media, [the United States] believed a right of entry was impossible and further negotiations would be futile."[25] Additionally, between August 2018 and October 2018 multiple landowners were contacted and all contacted landowners were opposed to the motion for possession.[26]

On November 14, 2018, the United States deposited $100.00 as estimated just compensation in the Registry of the Court.[27] The complaint indicates that an additional sum

---

[17] Dkt. No. 20 p. 3, ¶ 5.
[18] Dkt. No. 5 p. 5.
[19] *Id.*
[20] *Id.*
[21] Dkt. No. 20 p. 3, ¶ 6.
[22] *Id.*
[23] Dkt. No. 5 p. 5.
[24] Dkt. No. 20 p. 3, ¶ 7.
[25] *Id.* at p. 4, ¶ 7.
[26] Dkt. No. 5 p. 6.
[27] *See* Dkt. No. 8.

would be deposited in the Registry of the Court; this amount is to be "determined at the conclusion of the temporary estate . . . to constitute actual damages, if any."[28]

On the same day, November 14, 2018, the United States filed the instant motion for immediate possession pursuant to the Declaration of Taking Act, 40 U.S.C. § 3114 and Federal Rule of Civil Procedure ("Rule") 71.1 requesting "immediate possession of the condemned estate."[29] The United States subsequently filed a motion for an expedited hearing on the motion requesting possession by December 11, 2018 to honor contracts and prevent additional expense.[30] Defendants responded to both motions.[31] The Court now turns to its analysis.

## II. LEGAL STANDARD

Pursuant to the Declaration of Taking Act, the Government may bring an expedited proceeding to acquire land, or an easement in land, for public use by filing a Declaration of Taking setting forth a statement of authority under which the land is being taken, the public use for which the land is being taken, a description of the land, the estate or interest in the land being taken, a plan showing the land being taken, and an estimate of the just compensation amount.[32] "The United States has the authority to take private property for public use by eminent domain . . . but is obliged by the Fifth Amendment to provide 'just compensation' to the owner thereof."[33]

Upon the filing of the Declaration of Taking and depositing the estimated compensation amount in the Registry of Court, the following events occur by operation of law: "(1) title to the estate or interest specified in the declaration vests in the United States; (2) the land is condemned and taken for the use of the Government; and (3) the right to just compensation for the land vests

---

[28] Dkt. No. 1-1 p 13 (Schedule F).
[29] Dkt. No. 5 p.1; *see also* Dkt. No. 7 (additional exhibits).
[30] Dkt. No. 17.
[31] Dkt. Nos. 18 & 19.
[32] *See* 40 U.S.C. § 3114(a).
[33] *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 9 (1984) (citation omitted).

in the persons entitled to the compensation."[34] The court "may fix the time within which, and the terms on which, the parties in possession shall be required to surrender possession to the petitioner."[35] However, the district court performs "an almost ministerial function in decreeing the transfer of title" and is "powerless to dismiss the proceedings."[36]

Under the Declaration of Taking Act, "[t]itle and right to possession thereupon vest immediately in the United States."[37] The Supreme Court has recognized that the purpose of the Declaration of Taking Act is "to give the Government immediate possession of the property," while simultaneously providing the former owner "immediate cash compensation to the extent of the Government's estimate of the value of the property."[38] The United States may avail itself of the expedited procedures prescribed by the Act "whenever an officer of the United States is authorized to bring a condemnation action in federal court."[39] However, courts have determined that the eminent domain statutes require some level of negotiation between the government and the owner of a property interest prior to the institution of eminent domain procedures.[40]

The sole defense to a condemnation action is that the United States lacks the authority to take the interest sought in the complaint in condemnation.[41] The Fifth Circuit has found that judicial review in condemnation actions is limited to "the bare issue of whether the limits of

---

[34] 40 U.S.C. § 3114(b); *see East Tennessee Natural Gas Co. v. Sage,* 361 F.3d 808, 825 (4th Cir. 2004) (in a Declaration of Taking Act case, "[t]itle and the right to possession vest in the government immediately upon the filing of a declaration and the requisite deposit").

[35] 40 U.S.C. § 3114(d)(1).

[36] *United States v. 162.20 Acres of Land,* 639 F.2d 299, 303 (5th Cir. 1981) cert. denied 454 U.S. 828 (1981).

[37] *Kirby Forest Indus. v. United States,* 467 U.S. 1, 5 (1984); *United States v. 162.20 Acres of Land,* 639 F.2d 299, 303 (5th Cir. 1981) ("[W]here the government is  not already in possession of the property, the filing of a declaration of taking and deposit of estimated compensation vests title in the United States, accomplishing the taking.").

[38] *United States v. Miller,* 317 U.S. 369, 381 (1943).

[39] *United States v. 1.04 Acres of Land, More or Less, Situate in Cameron County, Tex.,* 538 F. Supp.2d 995, 1007 (S.D. Tex. 2008).

[40] *Id.* at 1010 (citing 8 U.S.C. § 1103(b)(3)).

[41] *162.20 Acres of Land,* 639 F.2d at 303.

authority were exceeded."[42] Additionally, while failure to follow consultation procedures may delay possession, non-compliance with any consultation requirements is a not a defense against the condemnation itself under the Declaration of Takings Act.[43]

### III. ANALYSIS

The United States avers that acquiring the easement immediately is a necessary step in implementing the congressional directive to secure the border between the United States and Mexico.[44] The United States points to the Secure Fence Act of 2006 as evidence of a congressional mandate.[45] Additionally, the United States references presidential Executive Order 13767, § 4(a) which directs the Secretary of the Department of Homeland Security to take appropriate steps to plan, design, and construct a wall along the southern border and the Congressional Appropriation of  Act of 2018[46] which appropriated funds for said purpose.

The United States additionally notes that it requires possession of the temporary easement to conduct a survey and site assessment by December 11, 2018.[47] The United States submits the affidavit of Enrique Villagomez ("Villagomez"), Project Manager with the United States Army Corps of Engineers, who declares that survey work has already begun on tracts for which the government has secured Rights of Entry, and that these surveys will conclude by the end of December 2018.[48] Villagomez further avers that the land that is the subject of this action is the only parcel of the project for which the United States has not obtained the right to survey.[49]

---

[42] *Id.*
[43] *1.04 Acres*, 538 F. Supp. 2d at 1013; *see also 162.20 Acres of Land*, 639 F.2d 299 (holding under 40 U.S.C. § 258a, the predecessor statute to 40 U.S.C. § 3114(d), that while a district court can enjoin possession of the property until there was compliance with the requirements of the National Historical Preservation Act of 1966, such lack of compliance is not a defense to the condemnation itself).
[44] *Id.*; *see* Dkt. No. 1.
[45] 109 P.L. 367, 120 Stat. 2638.
[46] Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348, 733 (2018).
[47] Dkt. No. 17 p. 3, ¶ 11;
[48] Dkt. No. 17-3 ¶ 5.
[49] *Id.* ¶ 9.

The United States highlights that it has engaged in negotiations with Defendants since April 2018, and that "[a] Declaration of Taking is filed as a last resort, and only after an agreement on the right of entry is determined impossible."[50] The United States also indicates that it had to "conduct extensive research" in order to determine ownership of the subject property before filing the Declaration of Taking, and therefore the United States did not delay in filing this action or the instant motion for immediate possession.[51]

Defendants provide two counter-arguments. First, Defendants argue that the Declaration of Taking Act does not entitle the United States to immediate possession of the land. Defendants' second argument is that immediate taking is not necessary to fulfill the "purported 'congressional directive.'"[52] Defendants note that the Secure Fence Act of 2006 was enacted twelve years ago, Executive Order 13767 was enacted two years ago, and the Appropriations Act of 2018 was enacted eight months ago. On this basis, Defendants argue that there is no urgency requiring immediate possession, and that, regardless "there is no reasonably demonstrated need . . . for a border wall in the Rio Grande Valley."[53]

Finally, Defendants request, in the alternative, that should the Court grant the United States' motion, the Court require the United States to provide Defendants "reasonable notice of no less than 72 hours" before entering the property.[54] Defendants own goats, cattle, a barn, and lease apartments on the property so they request reasonable notice "for safety reasons."[55]

Defendants' first argument is to no avail. Under the Declaration of Takings Act, once the United States has fulfilled the statutory requirements, the "[t]itle and right to possession . . . vest

---

[50] Dkt. No. 20 p. 3, ¶¶ 4–7.
[51] *Id.* at p. 4, ¶ 9.
[52] Dkt. No. 18 p. 5.
[53] *Id.* at p. 6.
[54] *Id.* at p. 8, ¶ 14.
[55] *Id.*

immediately in the United States."[56] Here, the United States has filed a Declaration of Taking and deposited the estimated compensation amount in the Registry of the Court.[57] Accordingly, title has vested in the United States, the land is condemned, and Defendants are entitled to compensation by operation of law.[58] All that remains is for this Court to fix the time and terms on which the parties in possession are required to surrender possession.[59]

Defendants' second argument amounts to stating that the border wall project has already been delayed and the border wall is not necessary, thus, the United States has no reason to protest against further delay. First, the Court considers Defendants' argument concerning the reasonableness of the current taking. Determining whether the border wall is reasonable or unreasonable is beyond the purview of this Court. Congress has provided a mandate and appropriated fund for the building of the border wall and the executive has utilized its authority to implement the will of Congress. The Fifth Circuit has cautioned that "federal courts do not second-guess governmental agencies on issues of necessity and expediency when condemnation is sought; such matters are within the discretion of the legislature or of administrative bodies by delegation, and the concept of justiciability limits judicial review to the bare issue of whether the limits of authority were exceeded."[60] Similarly, the Supreme Court has stated:

> It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area. Once the question of the public purpose has been decided, the amount and character of land to be taken for the

---

[56] *Kirby Forest Indus. v. United States*, 467 U.S. 1, 5 (1984); *United States v. 162.20 Acres of Land*, 639 F.2d 299, 303 (5th Cir. 1981) ("[W]here the government is  not already in possession of the property, the filing of a declaration of taking and deposit of estimated compensation vests title in the United States, accomplishing the taking.").
[57] *See* Dkt. Nos. 2 & 8.
[58] *See* 40 U.S.C. § 3114(b).
[59] 40 U.S.C. § 3114(d)(1).
[60] *162.20 Acres of Land*, 639 F.2d at 303.

project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch.[61]

Further, "it is perfectly clear that the judicial role in examining condemnation cases does not extend to determining whether the land sought is actually necessary for the operation of the project."[62] This Court, thus, cannot, and will not, substitute its judgment for that of the relevant government agencies with respect to the acquisition of these subject takings.

Next, the Court addresses the Defendants' argument regarding delay. The Court is unconvinced by Defendants' argument that since there has already been delay, a further delay is of no impact. The fact that it has taken twelve years to fulfill a congressional mandate provides no reason for further delay, but instead indicates that the United States has already engaged in significant delay.

However, the Court is mindful that the current urgency on the part of the United States appears to be a self-created emergency. While the United States indicated it began conferring with Defendants in April of 2018[63] and that it believed that further negation was futile on September 4, 2018,[64] no complaint was filed in this Court until November 5, 2018.[65] Thus, the fact that the United States engaged in contract discussions without taking the necessary legal steps to ensure that title and possession have duly vested before work can begin is little reason for this Court to act in undue haste or neglect to ensure that the due process and property rights of Defendants are protected.

---

[61] *Berman v. Parker*, 348 U.S. 26, 34 (1954); *see also West, Inc. v. United States*, 374 F.2d 218, 222 (5th Cir. 1967) ("[I]t is not for the judiciary to determine what is necessary for successful consummation of a project any more than it is the court's function to select the precise parcels to be condemned.") (citations omitted).
[62] *United States v. 2,606.84 Acres of Land in Tarrant County, Texas (Tarrant County)*, 432 F.2d 1286, 1289 (5th Cir. 1970).
[63] Dkt. No. 5.
[64] Dkt. No. 20 p. 4, ¶ 7.
[65] Dkt. No. 1.

The United States is provided significant authority under the Declaration of Takings Act to engage in the taking of property for public purposes.[66] However, the Declaration of Takings Act also provides this Court the authority to fix the time and terms on which possession is enacted.[67] This Court's authority to fix the time and place of possession is, in part, to ensure that the United States does not abuse the authority it has been granted and that landowners are afforded sufficient process before being deprived of their property.[68]

Thus, the Court considers the process that has been afforded. The United States indicates that at least some Defendants have had seven months' notice, and that the United States engaged in a good faith effort to consult as many owners as possible.[69] Additionally, Defendants had sufficient time to consult and engage representation.[70] Defendants provide no affirmative reason for delay, while the United States has provided affidavits indicating that delay will cost the United States, and thus the taxpayer, additional expense.[71] Further, although the United States delayed in filing this action, the United States provided evidence that they have not delayed in engaging in the survey work required and has surveyed all tracts to which it has obtained Right of Entry and the instant property is the last remaining tract which needs to be surveyed.[72] Finally,

---

[66] *See* 40 U.S.C. § 3114(b); *Tarrant County*, 432 F.2d 1286.

[67] *See id.* § 3114(d)(1).

[68] *See United States v. 74.57 Acres*, No. 12-0239-WS-N, 2012 U.S. Dist. LEXIS 51441, at *7-8 (S.D. Ala. Apr. 11, 2012) (noting that "[f]ederal courts have construed [§ 3114(d)] as empowering (and perhaps even obligating) district courts to examine the equities of the matter to evaluate whether some undue hardship to the present landowner or occupant might warrant some temporal gap between the filing of the declaration of taking and the owners' surrender of possession."); *Sage, 361 F.3d at 825* ("Although the district court fixes the time and any terms of the possession, the government takes possession of the condemned property as a matter of course, unless the landowner or occupant demonstrates some undue hardship that warrants a delay."); *United States v. Certain Land in Borough of Manhattan, City, County and State of New York*, 332 F.2d 679, 682 (2nd Cir. 1964) (remanding for district court to exercise its statutory power "to determine the terms and conditions of possession by the government" after hearing from such witnesses as all parties may wish to call); *United States v. 6576.27 Acres of Land, More or Less, in McLean County, N.D.*, 77 F. Supp. 244, 246 (D.N.D. 1948) (act affording court the power to fix time and terms of possession confers "duty on the part of this Court to see that such date for possession and terms of possession are in accordance with the equities.").

[69] *See* Dkt. No. 5 p. 5; Dkt. No. 20.

[70] *Id.*

[71] Dkt. No. 17.

[72] *See* Dkt. No. 17-3.

the United States is only seeking a temporary easement and states that surveying will be done within thirty days.[73] This would provide minimal interference for Defendants' use of their property.

Thus, while the Court reminds the United States that it should not, and may not, rely on this Court, an independent member of the judiciary, to rubber-stamp *any* judicial filing by *any party* without engaging in the scrutiny necessary to ensure fundamental fairness of process for all parties, the Court finds that Defendants have not provided any reason to delay possession and the United States has provided evidence that it has engaged in good faith consultations and negotiations as required under the relevant statutes. Thus, Court finds that the United States should be granted immediate possession of the requested easement.

However, the Court also determines Defendants' request for 72 hours' notice before the United States enters the property for the safety of Defendants' animals and tenants to be reasonable. Accordingly, the Court utilizes the authority provided it under the Declaration of Taking Act to fix the terms in which Defendants surrender possession[74] to require the United States provide Defendants 72 hours' notice before entering Defendants' property.

To ensure the Defendants' rights to their property are fully protected, the Court additionally takes into consideration the issue of compensation, although no party has yet raised the issue. The Court is concerned that the estimated compensation of $100 is insufficient given the easement being requested. The subject property here is 27.36 acres and the easement requested is for twelve months with the right "to survey, make borings, and conduct other investigatory work . . . including the right to trim or remove any vegetative or structural obstacle

---

[73] *See* Dkt. No. 7; 17-3.
[74] *See* 40 U.S.C. § 3114(d)(1); *see also see also United States v. 1.04 Acres*, 538 F. Supp. 2d 995, 1014 (S.D. Tex. 2008) (noting that pursuant to the authority in § 3114(d) courts may set conditions prior to entry, including requiring consultation).

that interfere with said work."[75] Yet, the estimated compensation would not cover the cost to repair even slight damages.

"The burden of establishing the value of lands sought to be condemned is on the landowner."[76] Federal courts have long held that an appropriate measure of damages in a partial-taking case, such as is the case here, "is the difference between the value of the parent tract before the taking and its value after the taking."[77] "[J]ust compensation must be measured by an objective standard that disregards subjective values which are only of significance to an individual owner."[78] Further, the estimated deposit alone is merely an estimate and is meaningless to the issue of just compensation.[79] Accordingly, although the Court is granting the United States' request for possession, the Court finds that in light of concerns the Court has raised, Defendants may, if they choose, present evidence at this stage to determine whether the $100 valuation is insufficient.

## IV. HOLDING

Based on the foregoing, this Court **GRANTS** the United States' motion for immediate possession.[80] Accordingly, the motion for an expedited hearing[81] is **DENIED AS MOOT**.

This Court, therefore, **ORDERS** that all Defendants and all persons who own or claim ownership, possession and/or control of the property described in the Schedules[82] attached to the complaint must allow the United States access to the property subject to the following terms:

---

[75] Dkt No. 1-1 p. 11 (Schedule E).
[76] *United States v. 8.41 Acres of Land, More or Less, Situated in Orange Cty.,* 680 F.2d 388, 394 (5th Cir. 1982).
[77] *Id.* at 392.
[78] *United States v. 50 Acres of Land,* 469 U.S. 24, 35 (1984).
[79] *See, e.g., Miller,* 317 U.S. at 381 ("The payment is of estimated compensation; it is intended as a provisional and not a final settlement with the owner; it is a payment 'on account of' compensation and not a final settlement of the amount due."); *Evans v. United States,* 326 F.2d 827, 829 (8th Cir. 1964) ("The deposit of estimated compensation by the government is no evidence of value and has no bearing whatsoever on value.") (citations and internal quotation marks omitted); *United States v. Catlin,* 142 F.2d 781, 784 (7th Cir. 1944) (stating that the government's estimate of the value of the property taken "is merely tentative," and that "the amount awarded may be increased or decreased by final judgment.").
[80] Dkt. No. 5.
[81] Dkt. No. 17.

The United States is hereby granted the right to survey, make borings, and conduct other related investigations on the tract of land described in the aforementioned Schedules for the public purpose of conducting surveys, tests, and other investigatory work needed to plan the proposed construction of roads, fencing, vehicles barriers, security lighting, and related structures designed to help secure the United States/Mexico border within the State of Texas. Additionally, the United States is granted the right to trim or remove any vegetative or structural obstacles on the property that interfere with the aforementioned purpose and work. The United States must provide Defendants 72-hour notice before entering the property. The easement acquired by the United States will begin immediately and will end on December 12, 2019.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 12th day of December, 2018.

_____
Micaela Alvarez
United States District Judge

---

[82] Dkt. No. 17-1.